**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**


VIRGINIA C. KASPAR,

      Plaintiff,

      vs.                                 No. CIV 99-0262 JC/LFG  (ACE)

CITY OF HOBBS, et al.,

      Defendants.


**MEMORANDUM OPINION AND ORDER**

THIS MATTER came on for consideration of Defendants' Motion for Summary Judgment with regard to Defendant Jack Lamb ("Defendant Lamb's Motion"), filed November 23, 1999 *(Doc. 64)*, and Defendants' Motion for Summary Judgment regarding Defendant Matt Rhoads ("Defendant Rhoads' Motion"), filed December 1, 1999 *(Doc. 72)*.  The Court has reviewed the motions, the memoranda and exhibits submitted by the parties, and the relevant authorities.  The Court finds that Defendant Lamb's Motion is not well taken and will be denied, and Defendant Rhoads' Motion is well taken and will be granted.

## I.  Factual Background

On the night of March 13, 1997, Defendants Durham and Lamb, officers with the City of Hobbs police department, conducted a warrantless search of Plaintiff Virginia Kaspar's home, looking for a man named "George."  The parties agree that Plaintiff was in bed during the search, and did not personally give consent to search her home.  However, the parties dispute whether Pete Losoya, a friend of Plaintiff's who helps her out with various chores, consented to the search.  Plaintiff contends

that any consent Mr. Losoya may have given was invalid because he lacked either actual or apparent authority to consent. Plaintiff further claims that the officers exceeded the scope of the search by searching drawers, cabinets and other places where a person could not hide. Plaintiff asserts that the search shocked and distressed her, and caused her to no longer feel safe in her home and unable to sleep. She further claims that after the search she needed several days to "put her house back together" which increased the pain she suffers from a "physical condition." Pl.'s Compl., filed March 11, 1999 *(Doc. 1)*, ¶ 21.

Approximately one month following the search, Plaintiff filed a citizen complaint with the Hobbs police department. Sgt. Matt Rhoads[1] investigated the complaint and concluded that it was unfounded. Plaintiff brings this suit seeking, *inter alia*, compensatory and punitive damages against Officers Durham and Lamb, their supervisor Sgt. Matt Rhoads, Chief of Police Tony Knott, and the City of Hobbs. Plaintiff claims that Defendants violated her right to be free from unreasonable searches under the Fourth Amendment to the United States Constitution and Article II, Section 10 of the New Mexico Constitution, as well as her property right to be free from trespass. Plaintiff's Second Amended Complaint, filed September 30, 1999 *(Doc. 43)*, also claims that Defendant Knott violated Plaintiff's right "to be free from retaliation for her effort to obtain redress" under the First and Fourteenth Amendments to the United States Constitution based on statements he made in a newspaper article. However, Plaintiff does not mention the additional claims described in the Second Amended Complaint in the "Plaintiff's Claims" section of the Pretrial Order. *See* Pretrial Order at 4-5, filed January 27, 2000 *(Doc. 116)*.

---

[1] Sgt. Matt Rhoads is the supervisor of the "Tactical" or "Gang" Unit, of which Officers Durham and Lamb are members.

## II.     Standard of Review

Summary judgment should be granted if "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). Thus, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted). The court must "view the evidence and draw any inferences in a light most favorable to the party opposing summary judgment, but that party must identify sufficient evidence" that would justify sending the case to a jury. *See Williams v. Rice*, 983 F.2d 177, 179 (10th Cir. 1993) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-52 (1986)).

## III.     Discussion

### A.     *Defendant Lamb's Motion*

As a preliminary matter I will address Plaintiff's request that the Court impose sanctions on Defendants for filing Defendant Lamb's Motion. A party's request for Rule 11 sanctions "shall be made separately from other motions or requests." FED. R. CIV. P. 11(c)(1)(A). Here, Plaintiff's request for sanctions is incorporated in her response brief to Defendant Lamb's Motion, and so does not comply with the Rule 11 requirement for a separate request. Although the Court, on its own initiative, may enter an order describing conduct that appears to violate the rule, I decline to do so. *See* FED. R. CIV. P. 11(c)(1)(B). Accordingly, Plaintiff's request for Rule 11 sanctions is not well taken and will be denied.

Defendant Lamb moves for summary judgment based on his assertion that he did not participate in or hear the conversation between Officer Durham and Mr. Losoya prior to the search

of Plaintiff's house. Lamb states that as he observed Durham and Losoya talking together outside, Losoya began to lead Durham towards Plaintiff's house while gesturing towards the house with his hands. Lamb further testified that as he walked towards Durham and Losoya, he heard Losoya say "sure come on." Lamb Dep. at 80-81, Ex. C to Def.'s Mem. in Support of Def.'s Mot. *(Doc. 65)*. Thus, Lamb claims that when he followed Durham into Plaintiff's home, he reasonably relied upon the apparent consent provided to a fellow officer, and at a minimum is entitled to qualified immunity.

Plaintiff points to Losoya's and Durham's deposition testimony to dispute Lamb's version of this event. Losoya states that he was inside Ms. Kaspar's house and answered the door to find a police officer standing there. Losoya claims that he stepped outside and the officer asked him if he "knew of a guy by [sic] George." According to Losoya, at this point "another policeman came up, and they asked me if I lived there," to which Losoya responded "No, I don't. I just come over here every now and then, and do chores for her, because she's disabled." Losoya testified that when the officers asked if Plaintiff was home, he "pointed to the door" and "said '[s]he's in there now,' and [the officers] went in." Losoya Dep. at 16, 69, Ex. 1 to Pl.'s Resp. to Def.'s Mot. (emphasis added). Losoya's testimony indicates that neither officer requested consent to search the house, and that both officers were present when Losoya: 1) denied living at Plaintiff's house, and 2) stated that Plaintiff was inside the house.

Plaintiff also points out that Durham's testimony supports part of Losoya's testimony while conflicting with some of Lamb's. Although Durham could not recall the name of the other police officer who entered Plaintiff's house that night, he testified that "somebody walked down with me [to Plaintiff's house]" and that the officer was located "[s]omewhere right close" during Durham's conversation with Losoya. Durham claims that he asked Losoya "if he would let me do a quick check

and make sure [George] wasn't in there" and that Losoya then "led me right in the house." When asked whether Losoya responded verbally, Durham replied: "I couldn't tell you if he actually said, yeah, come on in, or he just turned, and opened the door and walked right in." Durham Dep. at 199, 203, 206-07, Ex. 2 to Pl.'s Resp. to Def.'s Mot.

The evidence described above raises factual disputes regarding whether Defendant Durham requested or obtained consent, and whether Defendant Lamb was aware of that fact. Viewing the evidence and drawing all inferences in favor of Plaintiff, a reasonable jury could find that Defendant Lamb was the officer who accompanied Defendant Durham to Plaintiff's house, and that Defendant Durham failed to obtain consent before entering Plaintiff's house. A jury could further find that Lamb was privy to almost all of the conversation between Losoya and Durham, and was therefore aware of whether consent to search had been requested or given. Because material issues are in genuine dispute, summary judgment is precluded on Defendant Lamb's motion for summary judgment.

Finally, Defendant Lamb claims that at a minimum, he is entitled to qualified immunity. However, Plaintiff's claim that Defendants Durham and Lamb conducted a warrantless search without valid consent alleges the deprivation of an actual constitutional right, and a search under these circumstances violates clearly established law. *See United States v. Butler*, 966 F.2d 559, 562 (10th Cir. 1992) (a warrantless search is *per se* unreasonable unless shown to fall within a carefully defined set of exceptions, such as a valid consent).[2] As indicated above, there are underlying factual disputes of material issues in this case. Such disputes preclude granting qualified immunity. *See Painter v. Robertson*, 185 F.3d 557, 567 (6th Cir. 1999) (citing *Johnson v. Jones*, 515 U.S. 304, 313-15 (1995)) (finding that summary judgment on the basis of qualified immunity is inappropriate

---

[2] In this case, Defendants do not claim that exigent circumstances justified the search.

where conflicting evidence raises subordinate factual questions that a fact-finder must resolve). For all of these reasons, Defendant Lamb's motion for summary judgment will be denied.

### B.     *Defendant Rhoads' Motion*

Defendant Matt Rhoads moves for summary judgment in his individual capacity. Defendant Rhoads became the supervisor of the Tactical or Gang Unit on February 1, 1997, and was the immediate supervisor of Defendants Durham and Lamb when Plaintiff's house was searched on March 13, 1997. Plaintiff alleges that Defendant Rhoads is liable under 42 U.S.C. § 1983 because he: 1) failed to conduct an adequate investigation of Plaintiff's citizen complaint and failed to recommend remedial action, thereby ratifying the misconduct of his subordinates and 2) failed to properly train and supervise his subordinates. Pl.'s Resp. to Def. Rhoads' Mot. at 1-2 *(Doc. 89)*.

Strict supervisor liability does not exist under § 1983. *See Jenkins v. Wood*, 81 F.3d 988, 994 (10th Cir. 1996). To demonstrate supervisor liability under § 1983, Plaintiff must show that Rhoads "participated or acquiesced in the constitutional deprivations." *Meade v. Grubbs*, 841 F.2d 1512, 1528 (10th Cir. 1988). Furthermore, for a supervisor to be liable in either an official or personal capacity, an "affirmative link" must exist between the constitutional deprivation and the supervisor's control, direction or failure to supervise. *See Williams v. Hart*, 930 F.2d 36 (10th Cir. 1991) (unpublished table decision), *available in* 1991 WL 47118 at **1 (citing *McKay v. Hammock*, 730 F.2d 1367, 1374 (10th Cir. 1984) (abrogation recognized on other grounds)).

#### 1.     *Supervisor liability based on Rhoads' ratification*
#### *of Durham's and Lamb's misconduct*

Plaintiff does not allege that Defendant Rhoads personally participated in or directed the search of Plaintiff's house on March 13, 1997. Rather, Plaintiff presents evidence that Rhoads

conducted an inadequate investigation and report of Plaintiff's citizen complaint. However, her claim that Rhoads' inadequate investigation established supervisor liability by ratifying his subordinates' actions fails for two reasons.

First, while an "authorized policy-maker" may establish municipal liability through ratification of a subordinate's decision, *see City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988), most of Plaintiff's cited cases do not indicate that ratification may similarly establish supervisor liability. The majority of Plaintiff's cases address issues related to conspiracy claims or the establishment of municipal liability, and are not relevant to a discussion of individual supervisory liability under § 1983. However, two of Plaintiff's cases initially appear to offer support for her ratification theory of supervisor liability. Both *Larez v. City of Los Angeles*, 946 F.2d 630 (9th Cir. 1991), and *Watkins v. City of Oakland*, 145 F.3d 1087 (9th Cir. 1998), are cases in which the plaintiffs alleged § 1983 claims of excessive force that resulted in physical injuries and property damage. Notably, the supervisor liability claims in both *Larez* and *Watkins* involved authorized policy-makers, not an officer's immediate supervisor.[3]

The *Larez* court affirmed the trial court's jury instruction that a supervisor is liable if he "set[] in motion a series of acts by others, or knowingly refused to terminate a series of acts by others, which he . . . reasonably should know, *would cause others to inflict the constitutional injury*." *Larez*, 946 F.2d at 646 (emphasis added). This instruction appears to predicate liability on the supervisor's actions or omissions that occurred *prior* to the alleged constitutional injury. However, the same court also indicated that the jury verdict against the police chief was supported by his "ratification" of an

_____

[3] Plaintiff does not allege that Rhoads is the final policy-maker regarding police search practices. *See Praprotnik*, 485 U.S. at 127.

investigation of the alleged injury when the police chief sent a letter informing the plaintiff that his complaints against the police would not be sustained. *See id.* Thus, the court seemingly contradicts itself on the issue of whether a supervisor can incur liability by "ratifying" a subordinate's unconstitutional conduct *after* it has occurred. The court in *Watkins* sheds some light on this issue.

The defendant-police chief in *Watkins* similarly concurred in an investigation and report that dismissed the complaints against one of his subordinate officers. In affirming a finding of supervisory liability, the court found that "*[l]ike [the police chief] in Larez,* Chief Samuels signed a[] . . . report dismissing [plaintiff's] complaint despite evidence of Officer Chew's use of excessive force contained in the report *and* evidence of Officer Chew's involvement in other . . . incidents, *and* apparently without ascertaining whether the circumstances of those cases required some ameliorative action." *Watkins v. City of Oakland*, 145 F.3d 1087, 1093 (9th Cir. 1998) (emphasis added). Considering the cases together, *Watkins* and *Larez* do not support the proposition that ratification alone can expose a supervisor to individual liability. Rather, they suggest that a supervisor must have also had knowledge of prior incidents involving the subordinate and failed to take steps to address the potential problem. Nevertheless, despite what these Ninth Circuit cases may hold, no principle in this circuit supports supervisor liability based on an *after-the-fact* ratification of a subordinate's unconstitutional conduct.

The second reason that Plaintiff's ratification theory fails is that no causative link exists between Rhoads' conduct and the alleged unlawful search. Plaintiff fails to demonstrate how Rhoads' investigation of Plaintiff's complaint could have resulted in the alleged constitutional deprivation. *See Lee v. Town of Estes Park*, 820 F.2d 1112, 1116 & n.3 (10th Cir. 1987) (finding no nexus between a supervisor's handling of an incident report and the plaintiff's alleged § 1983 violation when

"whatever injury . . . suffered was complete by the time [the] Incident Report reached" the supervisor). For these reasons, Plaintiff's ratification theory cannot form a valid basis for supervisor liability. Consequently, Plaintiff's remaining theory of supervisor liability is her assertion that Rhoads failed to properly train and supervise his subordinate officers.

2.      *Supervisor liability based on Rhoads' failure to properly train and supervise*

Negligence is an insufficient basis on which to establish supervisor liability. *See Woodward v. City of Worland*, 977 F.2d 1392, 1399 & n.11 (10th Cir. 1992) (citing *Daniels v. Williams*, 474 U.S. 327, 330 (1986)) (finding that "[n]either simple nor gross negligence satisfies the scienter requirement of § 1983"). However, supervisors "may be liable under section 1983 when their failure to train subordinate employees [is] so severe as to constitute 'deliberate indifference.'" *Id.* at 1399 (quoting SCHWARTZ & KIRKLIN, SECTION 1983 LITIGATION: CLAIMS, DEFENSES, AND FEES § 7.11 at 386). A supervisor may be liable "where there is essentially a complete failure to train, or training that is so reckless . . . that future misconduct is almost inevitable." *Meade*, 841 F.2d at 1528 (citing *Hays v. Jefferson County*, 668 F.2d 869, 873-74 (6th Cir. 1987)). For example, in *Gutierrez-Rodriguez v. Cartagena*, 882 F.2d 553 (1st Cir. 1989), the court held a police supervisor liable for violations "when the super[visor] had personal knowledge of numerous complaints specifically against the officer in question, had taken no action, and had employed an inadequate disciplinary system permitting the officer to continue his improper practices." *Chamberlain v. City of Albuquerque*, 991 F.2d 805 (10th Cir. 1993) (unpublished table decision), *available in* 1993 WL 96883 at **5.

Defendant Rhoads asserts that from the time he became supervisor of the Tactical Unit to the date of the alleged unlawful search, he had no personal knowledge of allegations that his subordinate officers had engaged in any illegal searches. Given this absence of knowledge about any prior wrongdoing, Rhoads argues that he had no opportunity to remedy any alleged wrongs before the search of Plaintiff's house. Plaintiff disputes Rhoads' contention that he had no prior knowledge, and points to several examples of citizen complaints and incidents involving Defendants Durham, Lamb, and other members of the Tactical Unit. However, every complaint cited by Plaintiff, except one,[4] occurred either before Rhoads became supervisor or after the March 13, 1997 search of Plaintiff's house. Plaintiff does not present evidence that Rhoads had personal knowledge of any complaints before he was supervisor, and complaints occurring after the search necessarily lack the requisite causal nexus to the alleged constitutional violation.

Plaintiff alleges other facts that might be construed as indicating a "lack of proper training and supervision." However, these allegations fail when considered in light of Plaintiff's claims in this case. For example, Plaintiff states that "Rhoads generally did not give assignments to the Tactical Unit." Pl.'s Resp. ¶ 10. While possibly indicating a lack of supervision over individual assignments, this fact would not support an allegation that Rhoads improperly trained or supervised officers in search and seizure practices. Other allegations seem to reflect a lack of proper training in departmental policies, but fail to support a claim that Rhoads improperly trained officers regarding

_____

[4] The one exception involved a complaint against Defendant Durham for using improper procedures in pulling over a moving vehicle, for which Rhoads "issued some discipline." *See* Rhoads Dep. at 63-64, Ex. 1 to Pl.'s Resp. to Def. Rhoads' Mot. This incident did not involve any allegations of improper search or seizure.

lawful searches.[5]  In addition, Plaintiff points to Officer Tubbs' testimony to support a claim that Tactical Unit officers working for Rhoads "were trained and supervised to believe they could" conduct a warrantless, nonconsensual search of a residence "upon a 'reasonable suspicion' that a misdemeanor had been committed."  Pl.'s Resp. to Def. Rhoads' Mot. at 6.  However, Officer Tubbs attributed this particular training to the Hobbs Police Academy, not to Defendant Rhoads or the Tactical Unit.  Tubbs Dep. at 73-74, Ex. 4 to Pl.'s Resp. to Def. Rhoads' Mot.  Similarly unsupported is Plaintiff's claim that there is "evidence that Rhoads himself committed an unlawful seizure in the presence of at least one member of the Tactical Unit."  Pl.'s Resp. to Def. Rhoads' Mot. at 6.  Even assuming the admissibility of Mayor Joe Calderon's hearsay testimony on this claim,[6] Mayor Calderon cannot recall "which of the Rhoads boys" was involved in the incident,[7] thereby rendering this evidence almost useless as support for Plaintiff's proposition.  Furthermore, the incident did not involve allegations of an unlawful search.  Calderon Dep. at 30, Ex.3 to Pl.'s Resp. to Def. Rhoads' Mot.

The facts of this case are distinguishable from those of *Cartagena*, in that Plaintiff has not produced evidence that Defendant Rhoads had personal knowledge of complaints against his subordinates, or that he ignored those complaints and employed inadequate disciplinary or training measures.  Viewing the facts and evidence in the light most favorable to Plaintiff, she fails to provide evidence from which a reasonable jury could find that:  1) Rhoads' improperly trained or supervised

---

[5] Plaintiff asserts that "it was not the practice of the Tactical Unit to use the Consent to Search forms."  *Id.* ¶ 8.  However, Plaintiff does not allege that Consent to Search forms are required in order to obtain lawful consent.

[6] Mayor Calderon testified to the incident as related to him by Officer Bobby Arthur.

[7] According to Defendant, Matt Rhoads and Mark Rhoads are brothers on the Hobbs police force.  *See* Def.'s Reply in Support of Mot. for Summ. J. regarding Rhoads ¶ 2 , filed December 29, 1999 *(Doc. 93)*.

his subordinates in search and seizure procedures, and 2) the lack of proper training or supervision was causally linked to Plaintiff's allegations of constitutional deprivation. Because Plaintiff fails to demonstrate an affirmative link between Defendant Rhoads' conduct and the alleged constitutional violation, summary judgment will be granted to Defendant Rhoads in both his individual and official capacities. Defendants' Motion for Summary Judgment regarding Rhoads will be granted.

## IV. Conclusion

Wherefore,

IT IS ORDERED that Plaintiff's request that the Court impose sanctions on Defendants pursuant to Rule 11 is **denied**.

IT IS FURTHER ORDERED that Defendants' Motion for Summary Judgment with regard to Defendant Jack Lamb is **denied**.

IT IS FURTHER ORDERED that Defendants' Motion for Summary Judgment regarding Defendant Matt Rhoads is **granted** in both his individual and official capacities.

DATED this 11th day of February, 2000.

_____
**CHIEF UNITED STATES DISTRICT JUDGE**

Counsel for Plaintiff:      Richard Rosenstock
                                    Santa Fe, New Mexico

                                    Debra Poulin
                                    Santa Fe, New Mexico

Counsel for Defendants:    Gregory L. Biehler
                                    Beall & Biehler, P.A.
                                    Albuquerque, New Mexico